**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | CASE NO. 3:25 CR 554 |
| Plaintiff, | |
| v. | JUDGE JAMES R. KNEPP II |
| **MARQUAN DARNELL COMBS,** | |
| Defendant. | **MEMORANDUM OPINION AND ORDER** |

### INTRODUCTION

Currently pending before the Court is Defendant Marquan Combs's Motion to Suppress. (Doc. 15). The Government opposes (Doc. 17) and Defendant replies (Doc. 19). For the reasons discussed below, the Court denies the Motion.

### BACKGROUND

On April 14, 2025, Toledo Police Detective Matthew Sulick submitted an Affidavit For Search Warrant to Toledo Municipal Court Judge Michelle Wagner. *See* Doc. 17-1. It sought a search warrant for a residence on Milburn Avenue in Toledo, Ohio. *Id.* at 2. Police sought the warrant for evidence of a violation of Ohio Revised Code § 2923.162 – Discharge of Firearm on or near Prohibited Premises. *See id.* at 1, 2.

Toledo Police Officers executed the search warrant on April 16, 2025. (Doc. 17, at 2). During the search, police found a Palmetto State Armory, Model PA-15, 5.56 caliber firearm that had a barrel less than sixteen inches in length. *See id.* at 2-3; Doc. 15, at 2. The firearm was not registered to Defendant. *See* Doc. 15, at 2; Doc. 17, at 3.

On November 5, 2025, Defendant was indicted on one count of possession of an unregistered firearm, in violation of 26 U.S.C. §§ 5841, 5861(d), & 5871. (Doc. 1). He now seeks to suppress that firearm as the fruit of an unlawful search.

### STANDARD OF REVIEW

The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. To establish probable cause, officers must establish "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 214, 238 (1983). Put another way, there must be a "nexus" between the "place" to be searched and the "things" to be seized. *United States v. Reed*, 993 F.3d 441, 447 (6th Cir. 2021). "Probable cause is defined as 'reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion.'" *United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)).

Whether the affidavit gives rise to this fair probability "depends on the totality of the circumstances." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (citing *Gates*, 462 U.S. at 230). "The probable cause standard is a 'practical, non-technical conception' that deals with the 'factual and practical considerations of everyday life.'" *Id.* (quoting *Gates*, 462 U.S. at 231); *see also Gates*, 462 U.S. at 231 (highlighting the "common-sense conclusions about human behavior" that are integral to an analysis of probable cause) (quoting *United States v. Cortez*, 449 U.S. 411, 419 (1981)); *Florida v. Harris*, 568 U.S. 237, 244 (2013) (describing a "practical and common-sensical standard" which underlies the probable cause analysis).

In assessing the sufficiency of an affidavit supporting a warrant, the Court looks only to the four corners of the affidavit. *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010). To encourage use of the warrant procedure, a magistrate judge's probable-cause determination is afforded "great deference" and should be reversed only if the issuing judge arbitrarily exercised his discretion. *Gates*, 462 U.S. at 236 (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)); *see also id.* at 236-37 n.10 (recognizing courts' obligation to give issuing judges the benefit of the doubt in "doubtful or marginal cases"); *United States v. Brown*, 732 F.3d 569, 573 (6th Cir. 2013) ("[W]e may only reverse a magistrate's decision to grant a search warrant if the magistrate arbitrarily exercised his or her authority."); *United States v. Lapsins*, 570 F.3d 758, 763 (6th Cir. 2009) ("So long as the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more.") (citation modified).

### DISCUSSION

Defendant moves to suppress all evidence found in the search performed pursuant to the warrant. (Doc. 15). He contends the facts upon which the search warrant affidavit relies (including a ShotSpotter[1] report, information from unidentified sources, and social media posts) do not give rise to probable cause. *See id.* The Government opposes and contends the totality of the circumstances in the search warrant affidavit provided the issuing judge a substantial basis upon which to find probable cause for the requested search. *See* Doc. 17.

Preliminarily, Defendant requests an evidentiary hearing on his Motion. (Doc. 15, at 1, 6). A defendant is entitled to an evidentiary hearing on a motion to suppress "only if the motion is

---

1. "ShotSpotter is a mobile gunshot detection system utilized to detect, record, and locate gunfire and alert law enforcement. Agencies employ the mapping system to investigate gun activity more quickly and accurately." *United States v. Wilson*, 75 F.4th 633, 635 n.1 (6th Cir. 2023); *see also* Doc. 17-1, at 2 (search warrant affidavit description of ShotSpotter technology).

sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Ickes*, 922 F.3d 708, 710 (6th Cir. 2019) (quoting *United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006)). A hearing is not required when the arguments presented are "entirely legal in nature." *Abboud*, 438 F.3d at 577. "Challenges to the existence of probable cause . . . are questions of law." *United States v. Lawhorn*, 467 F. App'x 493, 495 (6th Cir. 2012). No hearing is necessary here, as Defendant's Motion challenges only whether the search warrant affidavit established probable cause for the issuance of a warrant and resolution of the Motion does not turn on contested facts. Nor does the Court believe oral argument is necessary.

Defendant's arguments initially attack each aspect of the facts in the affidavit *individually*. *See* Doc. 15, at 4 ("[T]he ShotSpotter reports do not give rise to probable cause."); *id.* at 5 ("This blanket statement does not make [the sources] reliable sources and should not raise to the level of probable cause."); *id.* ("[T]he Social Media videos or photos should not be used for the basis of probable cause as they show nothing illegal."). In Reply, Defendant does the same and then concludes that "the totality of the search warrant . . . is not based upon probable cause." (Doc. 19, at 3). The Court does not look at each fact in a vacuum, however, instead evaluating the totality of the circumstances. Taken together, the Court finds the ShotSpotter report, source information, and social media posts combined provided the issuing judge a substantial basis upon which to find probable cause, or "a fair probability that contraband or evidence of a crime [would] be found in" Defendant's residence or vehicles. *Gates*, 462 U.S. at 238.

The affidavit details ShotSpotter alerts on two occasions to an address on Cone Street. First, on February 21, 2025, there was a ShotSpotter alert identifying 26 shots fired. (Doc. 17-1, at 3). Second, on April 9, 2025, there were two ShotSpotter alerts to the same address within seconds,

identifying a total of sixteen shots fired. *Id.* Although Defendant challenges the ShotSpotter's

reliability based on only three shell casings found out of a total of 42 alleged gunshots detected on

two occasions, another Judge of this Court (in a case cited by Defendant) expressly rejected the

argument that a ShotSpotter alert "must be corroborated with 'recovered shell casings.'" *United

States v. Garcia*, 2021 WL 1964257, at *2 n.1 (N.D. Ohio). The *Garcia* court explained:

> Garcia does not identify a case in which a court has imposed such a requirement.
> Nor does he explain how a rule of that sort would be manageable, as that rule would
> categorically prohibit a probable cause finding in circumstances in which an
> individual fired a revolver, to say nothing of circumstances such as those in this
> case, in which an individual is alleged to have picked up shell casings after firing a
> gun.

*Id.* The same is true here. Moreover, the ShotSpotter alert here brought police to the area where

they recovered three shell casings, and "[w]hile on scene" they encountered an individual

identified as "Source 1" who told them two men "were observed coming out of" the Milburn

Avenue residence "and going into the alley." (Doc. 17-1, at 3).[2] That same source told police the

two men "had firearms and fired shots in the alley" before returning to the Milburn Avenue

residence. *Id.* Thus, the ShotSpotter and witness statement acted to corroborate one another

regarding shots being fired in the area. Additionally, the affidavit details Detective Sulick

personally followed up with both "Source 1" and another source, "Source 2" two days later. *Id.* at

4. Both "stated that they observed [Defendant] and another male leave [ ] Milburn Ave and walk

---

2. Defendant further argues the ShotSpotter alert "was to another home and not Defendant's home." (Doc. 15, at 4). The Government responds that "[t]he homes on Cone Street and Milburn Avenue back up to the same alley" and the ShotSpotter-identified address and Defendant's residence "are almost directly across the alley from one another." (Doc. 17, at 9 n.1). This geographical information is not contained in the affidavit itself. However, the affidavit details that the ShotSpotter technology triangulates the location of a shot to within 25 meters. (Doc. 17-1, at 2). The Court finds the affidavit sufficiently connects the ShotSpotter alert to the police response to the area, and then connects the information police obtained after responding to the Milburn Avenue residence.

into the alley" and "fire shots in the alley" on the date of the ShotSpotter alert. *Id.* The sources also further identified Defendant as living at the Milburn Avenue residence and identified cars he drove or had access to. *Id.*

Defendant challenges the reliance on these unnamed sources. He contends that, although the affidavit claims them to be "reliable sources," it provides no further information regarding their reliability and although it states they were used throughout the course of the investigation, it only identifies a single conversation with "Source 2" and two conversations over the course of three days with "Source 1." (Doc. 15, at 4). Defendant cites *United States v. Frazier*, 423 F.3d 526 (6th Cir. 2005) for the proposition that an affidavit supported only by confidential source information without facts supporting the reliability of those sources is insufficient. *Id.* And in Reply, Defendant cites *United States v. Helton*, 35 F.4th 511 (6th Cir. 2022) for the proposition that a law enforcement's statement that a source is reliable is insufficient to establish the source's reliability.[3] But, the search warrant affidavit here is supported by more than unsupported confidential source information. And those confidential sources upon which the affidavit relies were witnesses to the underlying crime itself. *See United States v. Pasquarille,* 20 F.3d 682, 687-88 (6th Cir.) (holding a tip from unnamed observer of attempted drug sale whose information has some corroboration

---

3. The Court notes Defendant *quotes* the *Frazier* court as stating: "Information contained in search warrant affidavit did not support finding that probable cause existed to search defendant's residence; affidavit, which was based almost exclusively on confidential informants' (CI) reports, contained no facts supporting their reliability." (Doc. 15, at 4). Although Defendant's description of the *Frazier* court's determination is accurate, this purported quotation appears nowhere in the court's opinion itself, but appears to come from a Westlaw-created headnote. Similarly, in Reply, Defendant *quotes* the *Helton* court as stating: "Sheriff's deputy's statement in search warrant affidavit that source who advised him that defendant had sold methamphetamine at residence was 'reliable' was not, by itself, sufficient to establish source's reliability; there was no indication of whether source was known to law enforcement or issuing judge, or how source proved to be 'reliable.'" (Doc. 19, at 3). Again, while a seemingly-accurate summary of the decision, the quoted material appears nowhere in the *Helton* opinion itself.

provides probable cause for search); *Cf. Frazier*, 423 F.3d at 533 ("Where, as here, the warrant affidavit is based almost exclusively on the uncorroborated testimony of unproven confidential informants (*none of whom witnessed illegal activity* on the premises of the proposed search), the allegation that the defendant is a drug dealer, without more, is insufficient to tie the alleged criminal activity to the defendant's residence.") (emphasis added). Although Defendant is correct that the search warrant affidavit contains scant information regarding "Source 1" or "Source 2," a commonsense reading suggests at a minimum these individuals are known to law enforcement. And the affidavit states the attesting officer interacted with both sources personally, and "Source 1" provided similar information both on April 9 and April 11. *See Garcia*, 2021 WL 1964257, at *2 ("The detective returned to the scene the following day and spoke with the same neighbor. While the neighbor remained unidentified in the search warrant affidavit, the neighbor provided the same information to the detective. The detective thus had an independent opportunity to speak with and observe the witness."). "An affidavit that supplies little information concerning an informant's reliability may support a finding of probable cause, under the totality of the circumstances, if it includes sufficient corroborating information." *United States v. Woosley*, 361 F.3d 924, 927 (6th Cir. 2004); *see also United States v. Caldwell*, 114 F. App'x 178, 181 (6th Cir. 2004) ("The fact that the informant in this case was not identified to the judge issuing the search warrant, moreover, is not fatal to the establishment of probable cause.").

Finally, the search warrant affidavit contained information connecting Defendant both to the residence to be searched and to firearms. First, it identified the Milburn Avenue residence as the residence Defendant listed on his Ohio Identification Card. (Doc. 17-1, at 3). And Toledo police conducted surveillance on that residence in March and April 2025 and observed Defendant entering and exiting the residence, standing on the front porch, and speaking with individuals in

the driveway. *Id.* This information was corroborated by (and correspondingly corroborates), the two sources' statements that Defendant exited and entered this home on the night of the ShotSpotter alert and that he lives at that residence. Second, the affidavit detailed and attached social media posts from March 18 and March 30, 2025, showing Defendant holding what appeared to be AR pistols. *Id.* at 4, 6-10.

Defendant admits the social media photographs show him "with what appears to be firearms." (Doc. 15, at 5). But he contends these photos do not show anything illegal because "Defendant at the time was an adult with no disqualifying offenses that would prevent him from possessing a firearm" and that, although one video was posted on March 30, 2025, "[t]here is nothing identifying the time frame of the photos or stills giving the time frame of when the video was made." *Id.* Thus, he contends they "should not be used for the basis of probable cause." *Id.*

First, nothing requires every fact evaluated in evaluating probable cause be a fact that, *by itself*, demonstrates criminal activity.[4] Here, the social media posts add to the totality of the circumstances supporting probable cause that evidence of the discharge of a firearm in violation of Ohio law would be found in Defendant's residence. Second, an affidavit in support of a search warrant must be reviewed "in a commonsense—rather than a hypertechnical—manner." *Woosley*, 361 F.3d at 926. There is a temporal connection between the timing of the social media posts (in mid and late March) and the evidence of shots fired (in early April). When viewed with such common sense, it is a reasonable inference that a video or photograph posted to social media may

---

4. Although not dispositive, the Court observes that although Defendant asserts there were no restrictions on his possession of firearms, and thus the photographs did not show anything illegal, the search warrant affidavit asserts he is "a non-qualified adult to possess a firearm" due to juvenile convictions. (Doc. 17-1, at 4, 5).

have been, or is even likely to have been, taken recently. And the social media posts may thus be considered part of the "totality of the circumstances" when determining probable cause.

Viewed with common sense and examining the totality of the circumstances, the Court finds the affidavit, which contained descriptions of the ShotSpotter alert, the source information, and the investigative information, taken together provided the Toledo Municipal Court judge with a substantial basis to conclude there was "a fair probability that contraband or evidence of a crime" would be found at the Milburn Avenue residence. *Gates*, 462 U.S. at 238. Therefore, Defendant's Motion is denied.

### CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendant's Motion to Suppress (Doc. 15) be, and the same hereby is, DENIED.

 s/ *James R. Knepp II*             
UNITED STATES DISTRICT JUDGE

Dated: May 29, 2026

9